IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 2:21CR27-4 (RCY) |
| ) | |
| CHRISTOPHER BRANDON VASQUEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's First Motion to Suppress (ECF No. 134). On March 2, 2022, the Court conducted a hearing on Defendant's First Motion to Suppress and denied such motion from the bench at the conclusion of the hearing. Thereafter, the Court issued an Order that denied the Motion and stated that an opinion would be forthcoming. This Memorandum Opinion sets forth the Court's reasons for its decision.

**I. Factual Findings**

On January 7, 2020, close to midnight, Defendant arrived in Norfolk on a bus from New York City. (Mem. Supp., ECF No. 134 at 1.) Members of the Norfolk Police Department's Interdiction Unit, including Investigator Gibson and Investigator Jacobs, were present and conducting surveillance as the bus unloaded. (Mem. Opp'n, ECF No. 182 at 2.) Investigator Gibson had been a Norfolk police officer for 18 years, a member of the Vice & Narcotics Division for 15 years, and a member of the Interdiction Unit for 11 years. (*Id.*) Investigator Gibson was wearing his uniform, displaying his badge, and wearing a body-worn camera. (*Id.* at 3.) Investigator Jacobs had been a Norfolk police officer for 24 years and a member of the Interdiction Unit for 8 years. (*Id.* at 2.) Investigator Jacobs was wearing plain clothes and did not have a body-

1

worn camera but was displaying his badge. (*Id.* at 3.)  The other members of the Interdiction Unit were wearing plain clothes without badges displayed or body-worn cameras. (*Id.*)

Investigator Gibson stood outside the door of the bus as passengers disembarked. (*Id.*)  The vast majority of passengers disembarked with bags or luggage of some kind. (*Id.*)  Defendant disembarked from the bus without visible luggage and stood behind Investigator Gibson for 15-20 seconds. (Def. Ex. 3, 2:02-2:21.)  Defendant then re-entered the bus. (*Id.*)  Defendant remained on the bus for roughly 40 seconds, during which several other passengers re-entered and re-exited the bus. (*Id.* 2:20-3:02.)  After that 40-second period, Defendant exited the bus quickly with his left hand in his coat pocket and his phone in his right hand. (*Id.* 3:00-3:05.)  Investigator Gibson and other officers then followed Defendant as he walked through the parking lot. (*Id.* 3:10-3:45.)  As Defendant approached the end of the parking lot, officers began to run towards him. (*Id.* 3:55-4:05.)  While in pursuit, Investigator Gibson shouted at Defendant, "hold on, boss man." (*Id.* 4:00-4:07.)

After the officers caught up to him, and while Defendant continued to slowly walk towards the back of the parking lot, the following dialogue transpired between Defendant and Investigator Gibson:

> Investigator Gibson: "You ride the bus?"
> Defendant: "Me?"
> Investigator Gibson: "Yeah."
> Defendant: "No."
> Investigator Gibson: "You getting off here?"
> Defendant: "No."
> Investigator Gibson: "You didn't get off here?"
> Defendant: "No."
> Investigator Gibson: "You sure?"
> Defendant: "Positive"

(*Id.* 4:11-4:18.)

At the end of this exchange, Investigator Gibson instructed Defendant to take his hand out of his coat pockets. (*Id.* 4:18-4:20.) Investigator Gibson then confronted Defendant and stated that he saw him get off of the bus and Defendant responded with "oh yeah I did." (*Id.* 4:20-4:30.) Shortly after, Investigator Gibson again instructed him again to take his hand out of his coat pocket, placed his hand on Defendant's arm, and, noticing a bulge, asked him what was under his coat. (*Id.* 4:28-4:35.) Defendant then took his bag out from under his coat and put his arms up. Investigator Gibson asked, "you ain't got no weapons on you," and Defendant responded, "no sir." (*Id.* 4:33-4:38.) The following conversation about Defendant's bag took place, as Defendant was patted down:

> Investigator Jacobs: "Let me see your bookbag."
> Investigator Jacobs: "No guns in there or anything?"
> Defendant: "No sir."
> Investigator Jacobs: "Mind if I take a look?"
> Defendant: "Nah go ahead."

(*Id.* 4:36-4:44.) After starting the pat down, Investigator Gibson told Defendant he was patting him down for weapons, asked if he was okay with that, and Defendant affirmed that he was okay with being patted down. (*Id.* 4:44-4:46.) After the pat down, and while Investigator Jacobs was searching the bag, Defendant was handcuffed. (*Id.* 5:18-5:20.)

After Defendant was handcuffed, Investigator Jacobs pulled plastic shopping bags out of the bag and ripped them open. (*Id.* 5:23-5:55.) Inside the plastic bags, officers found marijuana, cocaine, and drug packing materials. (Mem. Supp., ECF No. 134 at 5; Mem. Opp'n, ECF No. 182 at 7.) A search of Defendant's person revealed three cell phones. (Mem. Supp., ECF No. 134 at 5; Mem. Opp'n, ECF No. 182 at 8.)

## II. Procedural History

The Defendant was indicted, along with four co-defendants, on March 19, 2021. (ECF No. 3.) An Amended Indictment was filed on June 29, 2021. (ECF No. 95.) A Superseding Indictment was filed on August 4, 2021. (ECF No. 116.) Defendant filed his First Motion to Suppress on September 17, 2021. (ECF No. 134.) A Second Superseding Indictment was filed on October 20, 2021. (ECF No. 170.) The Government filed its Response in Opposition on October 29, 2021. (ECF No. 182.) Defendant filed his Reply on November 4, 2021. (ECF No. 187.)

## III. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Evidence gathered from an unreasonable search or seizure is inadmissible against the defendant. *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963).

On a motion to suppress, the burden is on the party who seeks to suppress the evidence. *United States v. Bello-Murillo*, 62 F. Supp. 3d 488, 491-92 (E.D. Va. 2014); *United States v. Seerden*, 264 F. Supp. 3d 703, 708 (E.D. Va. 2017). Once the defendant has established a basis for the motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *Bello-Murillo*, 62 F. Supp. 3d at 492; *Seerden*, 264 F. Supp. 3d at 708. "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law." *Bello-Murillo*, 62 F. Supp. 3d at 492 (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.2005)).

## IV. Discussion

The key dispute between the parties is when the seizure of the Defendant occurred. Defendant claims that he was seized the moment the police officers started running after him,

asking him to hold on. (Hr'g Tr. 73:1-5, 11-13, ECF No. 246.) The government contends that the seizure occurred once Investigator Gibson told Defendant to take his hands out of his pockets. (*Id.* 78:16-23.) There are three issues before the Court: (1) whether the time before Defendant was instructed to take his hands out of his pockets was a consensual encounter; (2) whether there was reasonable, articulatable suspicion to conduct a *Terry* stop at that moment; and (3) whether Defendant consented to the search of his bag. The Court answers all three in the affirmative.

### A. Consensual Encounter

The Fourth Amendment is not implicated in a police-citizen encounter when law enforcement officers approach an individual, in a public place, and ask to either speak with the individual, or ask the individual to answer a few questions. *Florida v. Bostick*, 501 U.S. 429, 439-40 (1991); *United States v. Black*, 525 F.3d. 359, 364 (4th Cir. 2008). The Supreme Court has instructed that "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Police-citizen encounters that are consensual require no justification, but those that are not consensual impose a detention on a citizen . . . ." *Id.* (citing *Bostick*, 501 U.S. at 434). To determine whether an encounter was consensual, a court must look at the totality of the circumstances and ask whether a reasonable person would have believed that he was free to leave. *Id*. (citing *United State v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989)).

The Fourth Circuit has enumerated an inexhaustive list of factors for courts to consider in the determination of whether, under the set of facts, a reasonable person would feel free to leave: (1) the number of police officers present during the encounter, (2) whether they were in uniform or displayed their weapons, (3) whether they touched the defendant, (4) whether they attempted to

block his departure or restrain his movement, (5) whether the officers' questioning was non-threatening, and (6) whether they treated the defendant as though they suspected him of "illegal activity rather than treating the encounter as 'routine' in nature." *Id.* at 299-300.

The totality of the circumstances, as shown by the application of these factors, leads to the conclusion that this encounter was consensual until the point when Defendant was instructed to take his hands out of his pockets. Two officers approached Defendant, one was in uniform, and the other was plain clothed and wearing a police medallion. The officers never displayed their weapons. The officers did not accuse Defendant of engaging in illegal activity.

Most importantly, until instructing Defendant to take his hands out of his pockets, the officers did not physically restrain his movements, block his departure, or touch him. In *United States v. Jones*, the Fourth Circuit placed significant weight on the fact that officers had positioned their police car to block the defendant's vehicle from leaving. *See Jones*, 678 F.3d 293, 301 (4th Cir. 2012) (collecting cases involving police blockage of the defendant). Here, Defendant clearly was not blocked from leaving, as he continued to move forward as the officers approached.

Additionally, Investigator Gibson used a casual tone when asking Defendant questions about whether he had been on the bus. The Supreme Court has explained that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street . . . by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497 (1983). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual." *Bostick*, 501 U.S. at 434-35 (citing *INS v. Delgado*, 466 U.S. 210, 216 (1984)). Merely asking whether Defendant had been on the bus is not sufficient to transform the encounter from a consensual encounter into a *Terry* stop.

### B. *Terry* Stop

A police officer can make a brief investigatory stop, known as a *Terry* stop, "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Broadhurst*, 697 Fed. App'x 221, 222 (4th Cir. 2017) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In determining whether a *Terry* stop was supported by a reasonable, articulable suspicion, a court must consider the "totality of the circumstances . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Innocent conduct that alone would not support a stop may amount to reasonable suspicion when considered together. *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004). Due weight should be given to the "common sense judgments reached by officers in light of their experience and training." *Id.* However, an officer's "hunch" is insufficient. *Terry*, 392 U.S. at 27. Presence in a "high crime area" is insufficient on its own to justify a stop. *United States v. Massenburg*, 654 F.3d 480, 488 (4th Cir. 2011) (citing *Wardlow*, 528 U.S. at 124).

Once Investigator Gibson instructed Defendant to keep his hands out of his pockets, Defendant had been seized. Shortly thereafter, Investigator Gibson repeated this request and touched Defendant's arm. At this point, a reasonable person would not have felt free to leave. The question thus becomes whether the facts were sufficient to give Investigator Gibson a reasonable, articulable suspicion that Defendant was involved in criminal activity.

The following facts give rise to reasonable, articulatable suspicion. Defendant was a passenger on a bus route known to the Interdiction Unit for being used by drug dealers to transport drugs and money to and from New York City. (Hr'g Tr. 6:1-7.) On the basis of his training and experience, Investigator Gibson looked for certain indicators that a passenger may be transporting drugs, including whether the passenger had luggage and whether he left the bus with a sense of

7

urgency. (*Id.* 7:6-15.) Investigator Gibson had observed Defendant exit the bus without a bag, stand behind him "to observe what [Investigator Gibson] was doing," and then Defendant reentered the bus. (*Id* 10:8-15, 11:5-10, 12:1-5, 12:13-19.) At the suppression hearing, Investigator Gibson explained that exiting and reentering the bus is a tactic used by drug traffickers. (*Id*. 10:18-25.) It gives the drug trafficker the opportunity to see whether they are the target of an investigation, if police are going to initiate contact or question him, and if that does not happen, the trafficker will reenter the bus to get the drugs and then depart the bus again. (*See id.*) When Investigator Gibson asked Defendant if he was on the bus, Defendant denied being on the bus three times. (*Id.* 16:17-25, 17:1-10.) These repeated falsehoods raised Investigator Gibson's suspicions, as Defendant was trying to separate himself from the bus. (*Id.* 17:8-10, 19-25.)

In viewing the totality of the circumstances, the officers had a reasonable, articulatable suspicion that Defendant was engaged in illegal activity.

**C. Consensual Search**

Consent can be given during a valid *Terry* stop. *See United States v. Watson*; 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); *United States v. Turner*, No. 92-5408, 1993 WL 398448, at *1 (4th Cir. Sept. 28, 1993) (noting that a search performed pursuant to the defendant's consent during a valid *Terry* stop was constitutionally valid); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 227-28 (1973) ("In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence.").

The test for whether consent was given for a search is subjective and based on the totality of the circumstances. *United States v. Robertson*, 736 F.3d 677, 680 (4th Cir. 2013). The

government bears the burden of proving consent. *Id.* The factors to consider are the officer's conduct, the number of officers present, the time of the encounter, and the characteristics of the person searched, such as age and education. *Id.* (citing *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996)).

At the time Investigator Jacobs asks Defendant whether he can search his bag, there were only two officers in Defendant's direct vicinity and only Investigator Gibson was uniformed. (Hr'g Tr. 22:3-9.) The conversation was not immediately accusatory. When Investigator Jacobs asked, "mind if I take a look?" Defendant did not begrudgingly submit, instead he said, "nah go ahead." (*See* Def. Ex. 3, 4:36-4:44.) At the evidentiary hearing, no evidence was introduced to suggest that Defendant had any specific characteristics that would render this search involuntary.

As such, the officers received valid consent to search Defendant's bag and the evidence produced by the search should not be suppressed.

### V. Conclusion

For the reasons stated above, the Court found that the search and seizure of Defendant on January 7, 2020, was at all times reasonable and did not violate the Defendant's Fourth Amendment rights. Therefore, the evidence produced by the search was not suppressed.

An Order that denied the First Motion to Suppress was issued on March 2, 2022 (ECF No. 241).

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: May 25, 2022